ORIGINAL

FILED
DEC - 8 2005
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

WPI, Inc.

Plaintiff,

COFC No. 05- -C

05-1268C

v

UNITED STATES OF AMERICA,

Defendant.

---

**COMPLAINT**

NOW COMES WPI, Inc. ("WPI"), by and through its undersigned attorneys, and for its Complaint alleges as follows:

**INTRODUCTORY STATEMENT**

1. WPI seeks to recover damages caused by Defendant United States of America, Department of Energy's ("DOE") breach of its contractual and regulatory obligation to mediate in good faith a dispute between the parties over the DOE's disallowance of WPI's invoices for payment according to its agreed indirect cost rates.

2. WPI has incurred and will continue to incur significant costs associated with the negotiation of a Mediation Agreement, the preparation and submission of a Premediation Statement and Reply to the DOE's Premediation Statement, preparation and travel for the mediation itself, the cost of the mediation services, and other damages as a result of DOE's violation of its contractual and other obligations.

**PARTIES**

3. WPI is a corporation formed under the laws of the Commonwealth of Virginia.

4. Defendant is the United States of America, acting through its executive agency, DOE.

## JURISDICTION

5. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §1491(a)(1).

## STATEMENT OF FACTS

### The Cooperative Agreement

6. The Cooperative Agreement ("Agreement") is a cost-reimbursement arrangement without fee or profit with WPI sharing in a small portion of the costs.

7. The total estimated cost for the Agreement was $21,431,780.00. DOE's cost share was $21,373,802.00 (99.5%) and WPI's was $107,978.00 (0.5%). Under the Agreement, DOE would reimburse WPI for DOE's cost share.

8. The stated purpose of the Agreement was to assist the DOE with improving the effectiveness of its communication to encourage public acceptance of technological solutions for environmental cleanup and hazardous waste disposal problems.

9. WPI's proposal was based on rates that were approved by its cognizant DOE Indirect Rate Contracting Officer.

10. At the request of DOE, the Defense Contract Auditing Agency ("DCAA") conducted an audit of WPI's proposal. In its report, DCAA recommended that DOE impose a ceiling on WPI's recovery of its indirect expenses.

11. DOE initially concurred with the auditors' recommendation that DOE impose ceilings on WPI's indirect cost rates, but after discussions with WPI, DOE agreed not to impose ceilings on WPI's indirect rates.

12. As a result of the indirect rate negotiations, the following special provision was included in the Cooperative Agreement:

> The Government reserves the right to impose a ceiling on any indirect cost rates proposed by [WPI] for application to this cooperative agreement. Prior to the start of any budget period, the Government may review [WPI's] then current or any proposed indirect cost rates to determine if the imposition of a ceiling is necessary to limit the Government's liability under this agreement.

13. The DOE did not impose a ceiling on any indirect cost rate proposed by WPI prior to the start of any budget period.

14. WPI's fiscal year extends from July 1 to June 30. At the beginning of each of its fiscal years, WPI submitted its proposed indirect rates to DOE.

15. When those proposed rates were approved, WPI invoiced according to those approved billing rates. At the conclusion of its fiscal year, WPI submitted its proposed incurred costs to DOE, which then audited and eventually approved those proposed costs.

16. After its receipt of the incurred indirect rate agreements signed by a DOE contracting officer, WPI submitted invoices to DOE for the difference between its billed and incurred rates.

17. The DOE Contracting Officer refused to pay the invoices because funds had not been obligated for that purpose.

18. In June 2005, the Contracting Officer made the following proposal to WPI by electronic mail:

> Before issuing a final determination, and in accordance with 10 CFR. 600.22, I would like to refer this matter for alternate dispute resolution, a voluntary consensual method of resolving disputes. Let me know if that is something you would consider.

> The Department of Energy dispute resolution specialist is available to provide assistance for such disputes, as are trained mediators of other federal agencies. A copy of this email has been sent to the DOE dispute resolution specialist.

19. According to DOE financial assistance regulations, "[b]efore issuing a final determination in any dispute in which informal resolution has not been achieved, the Contracting Officer shall suggest that the other party consider the use of voluntary consensual methods of dispute resolutions, such as mediation." 10 C.F.R. § 600.22(b).

20. After consulting with counsel and analyzing its alternatives, on August 3, 2005, WPI accepted the Contracting Officer's offer to engage in alternative dispute resolution ("ADR").

21. Following the DOE's suggestion, WPI requested to utilize the ADR services of a Judge from the General Services Administration Board of Contract Appeals ("GSBCA").

22. WPI's Chief Executive Officer, Garrick Solovey, also stated in the closing of his email to the Contracting Officer in which he accepted the DOE's offer of ADR:

> Although WPI has retained counsel, I would like to encourage you to keep the lines of communication open. We have agreed to ADR because we have a genuine interest in achieving a fair settlement of this dispute. As I have indicated to you several times in the past, I want to avoid making this matter more costly and time consuming than required for WPI or the taxpayer. We are hopeful that you share our objective.

23. On August 26, 2005, counsel for WPI received a telephone call from Jameson Eisenmenger, the DOE's counsel assigned to represent the agency for the ADR.

Mr. Eisenmenger explained that the DOE preferred mediation as the form of ADR to be pursued

by the parties. Counsel for WPI did not oppose this suggestion. Counsel agreed to negotiate a written Mediation Agreement.

**The Mediation Agreement**

24. On September 6, 2005, Mr. Eisenmenger proposed to counsel for WPI a draft mediation agreement. That draft included the following terms:

a. "The Parties have agreed to attempt to settle the dispute by mediation ("the Mediation")."

b. "The Parties voluntarily enter into the Mediation in an attempt to resolve a dispute amongst them. The signing of this Agreement is evidence that the Parties intend to conduct this Mediation in an honest and forthright manner and to make a serious attempt to resolve the dispute."

25. In response to DOE's proposed Mediation Agreement, WPI suggested an expanded description of the dispute, a statement of the alternatives available in the event that an agreement is not reached, clarification of the process for appointing the mediator, and a provision that the parties bear their own costs and DOE bear the costs of the mediator. WPI also proposed a clear statement that the parties are authorized to enter into a settlement agreement.

26. The parties negotiated agreements on each of the disputed provisions of the Mediation Agreement. The final agreement included a cost-sharing provision and a statement that the parties are authorized to enter into a settlement agreement. Throughout these negotiations, the DOE indicated its willingness to mediate the dispute.

27. After several weeks of negotiation, WPI executed the Mediation Agreement on September 30, 2005.

28. Contracting Officer Eric M. Simpson executed the Mediation Agreement on behalf of DOE on October 12, 2005. See Exhibit 1.

29. The executed Mediation Agreement included the terms quoted in paragraph 24, above, and the following additional relevant term: "The Parties acknowledge that they are authorized to enter into a negotiated settlement agreement, the terms of which shall be set by the Parties at mediation."

30. One of the delays in DOE's execution of the Mediation Agreement was to negotiate a change in the Agreement to accommodate the schedule of Mr. Simpson, DOE's Contracting Officer, so that he could attend the mediation.

31. On information and belief, following the execution of the Mediation Agreement, the DOE entered into a Memorandum of Agreement with the General Services Administration ("GSA") under which the GSA agreed to provide, on a cost reimbursement basis, the services of a Judge from the GSBCA to act as the mediator for the dispute between the parties.

32. On October 14, 2005, Judge Stephen M. Daniels, Chair of the GSBCA, appointed Judge Allan H. Goodman to serve as mediator (the "Mediator").

33. Judge Goodman conducted various conferences with counsel and established the schedule for the mediation by Order.

34. The parties agreed to conduct the mediation on November 29-30, 2005.

35. The parties submitted a Joint Appendix of Documents to the Mediator.

36. WPI submitted a Premediation Statement and extensive supplement to the Joint Appendix on November 3, 2005.

37. DOE submitted a Premediation Statement on November 9, 2005.

38. WPI submitted a Reply to DOE's Premediation Statement on November 27, 2005.

39. At no point did DOE advise WPI that it was no longer willing to mediate the dispute.

40. On Monday, November 28, 2005, WPI's Chief Executive Officer, Chief Financial Officer, Project Manager, cost accounting expert and legal counsel traveled from various points of origin in Virginia to Washington, DC, to meet and prepare for the mediation that was scheduled to begin the next day.

41. The WPI team made thorough preparations for the mediation and were ready to present an opening statement, witness testimony and legal argument in support of WPI's position.

**The Mediation**

42. On Tuesday, November 29, 2005, shortly after 10:00 a.m., before initiating the mediation, the Mediator called counsel into his office and inquired into the willingness of the parties to engage in mediation. To this, DOE counsel responded that his client was not willing to enter into any discussion that might have settlement of the dispute as its objective.

43. The Mediator asked the principals, Mr. Solovey and Mr. Simpson, to join with counsel and repeated his question whether the parties were present to mediate. Mr. Simpson stated that he had no intention to engage in any kind of settlement discussion.

44. Mr. Simpson stated that he offered ADR to WPI only because he was required to do so by regulation.

45. Mr. Simpson stated that his only purpose in entering into the mediation agreement and attending the scheduled mediation was to fulfill the regulatory prerequisite that he offer ADR before issuing a final determination.

46. Mr. Simpson stated that WPI should have known from a telephone conversation that he had with Mr. Solovey that DOE had no intention to seek settlement.

47. Any telephone conversation that took place between Mr. Simpson and Mr. Solovey occurred before Mr. Simpson offered ADR and the parties negotiated the Mediation Agreement.

48. Mr. Simpson stated that he was not authorized to settle the dispute because no additional funds are available.

49. The Mediator stated that because of the DOE's inflexible position, mediation could not take place.

50. The meeting was terminated before noon on November 29, 2005, with mediation never having been initiated. The Mediator issued an Order of Termination and Dismissal on December 6, 2005.

51. In reliance upon the DOE's representations, WPI has spent multiple hours and thousands of dollars in company resources, consultant and legal fees in preparing for mediation.

52. WPI reasonably relied to its detriment upon DOE's representations and obligations contained in the Mediation Agreement and otherwise.

## COUNT I

**Breach of Contract**

53. Paragraphs 1 through 52 are realleged and incorporated by reference as if fully set forth herein.

54. WPI entered into the Mediation Agreement according to the DOE's regulations that pertain to the resolution of disputes with the intent to resolve the dispute over DOE's refusal to pay WPI's agreed indirect cost rates pursuant to the terms of the Cooperative Agreement.

55. WPI has complied with all of its obligations under the Mediation Agreement.

56. DOE's refusal to attempt to resolve the dispute by mediation constitutes a breach of the Mediation Agreement.

57. DOE's refusal to conduct the Mediation "in an honest and forthright manner and to make a serious attempt to resolve the dispute" constitutes a breach of the Mediation Agreement.

58. The failure of a representative of DOE with authority to enter into a negotiated settlement agreement to attend the mediation constitutes a breach of the Mediation Agreement.

59. As a direct, proximate and foreseeable result of DOE's breach of the Mediation Agreement, WPI has incurred damages for which it is entitled to recover in an amount to be determined at trial.

## COUNT II

**Breach of Implied Covenant of Good Faith and Fair Dealing**

60. Paragraphs 1 through 59 are realleged and incorporated by reference as if fully set forth herein.

61. The Mediation Agreement contains an implied covenant of good faith and fair dealing, pursuant to which DOE is obligated to perform its obligations in good faith and not to take actions in derogation of WPI's contractual rights.

62. DOE has breached the covenant of good faith and fair dealing in the following, but not limited to the following, manner:

a. By failing and refusing to make a good faith effort to attempt to resolve the dispute by mediation; and

b. By failing and refusing to make a good faith effort to empower a DOE representative at the mediation with authority to enter into a settlement agreement.

63. DOE refused to attempt to resolve the dispute by mediation and refused to empower a representative at the mediation with authority to enter into a settlement agreement with specific intent to deprive WPI of a fair opportunity to settle the dispute according to the Mediation Agreement and DOE's regulations that govern disputes over the administration of financial assistance.

64. As a direct, proximate and foreseeable result of DOE's breach of the implied covenant of good faith and fair dealing, WPI has suffered damages for which it is entitled to recover in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, WPI respectfully requests judgment against the United States of America as follows:

A. Damages for breach of contract in an amount to be determined at trial, including, but not limited to, costs already incurred and such costs as may be incurred on a continuing basis until Defendant fully complies with its contractual obligations;

B. Damages for breach of implied covenant of good faith and fair dealing in an amount to be determined at trial;

C. Interest and costs, including attorney fees, as permitted by law, together with such other and further relief as the Court deems just and appropriate.

Dated: December 7, 2005

Respectfully submitted,

Robert E. Korroch
Francis E. Purcell, Jr.
Williams Mullen, P.C.
Fountain Plaza Three, Suite 200
721 Lakefront Commons
Newport News, Virginia 23606
757.249.5100 (telephone)
757.249.5109 (facsimile)
Attorneys for Plaintiff

#1073403 v1

EXHIBIT 1

# MEDIATION AGREEMENT

**Parties**

The Parties to the Dispute are the U.S. Department of Energy, an Executive Agency of the Federal Government, located at 9800 South Cass Avenue, Argonne, Illinois; and WPI, a private corporation located at 2020 Kraft Drive, Suite 2200, Blacksburg, Virginia, and incorporated (where)

**Dispute ("The Dispute")**

The dispute between the Department of Energy (DOE) and WPI arises under Cooperative Agreement Number DE-FC02-96CH10849 (hereinafter "Agreement"). The fundamental dispute is whether the DOE is obligated to compensate WPI for any amounts above that which was identified in the Agreement as the DOE's maximum obligation.

The DOE asserts that the subject cooperative agreement is a financial assistance award and is governed exclusively by the Federal Grants and Cooperative Agreement Act, 31 U.S.C. §§ 6301-6308, the DOE's Financial Assistance Regulations,10 C.F.R. Part 600, and the terms of the Agreement. The DOE therefore asserts that, pursuant to those authorities and under the express terms of the cooperative agreement, it is not required to provide funding above that which was identified in the Agreement as the DOE's maximum obligation.

WPI asserts that according to the terms of the Agreement and the conduct of the parties, the DOE has an obligation to compensate WPI according to the Final Indirect Expense Rate Agreement signed by WPI and the DOE. WPI alleges that it billed DOE using approved provisional rates that were based on DOE's anticipated obligation for each period. WPI further alleges that the billed rates were substantially less than incurred costs because when DOE obligated less than the projected amount, WPI's indirect costs were allocated to less direct work, resulting in a higher rate. WPI alleges that the DOE did not impose a ceiling on WPI's current or proposed indirect cost rates prior to the start of any budget period. Furthermore, in response to the DOE's argument that it is not obligated to compensate WPI because the Agreement is a financial assistance award, WPI asserts that under applicable federal law this cooperative agreement constitutes a contract. See United States v. President and Fellows of Harvard College, 323 F.Supp. 2d 151, 163-65 (D. Mass. 2004) (cooperative agreements subject to the Federal Grant and Cooperative Agreement Act of 1977 ("FGCAA") constituted contracts); Thermalon Indus., Ltd. v. United States, 34 Fed. Cl. 411, 418 ("Congress' use of the term 'agreement' in the [FGCAA] to describe a grant relationship cannot reasonably be interpreted as an indication that Congress intended for all grant agreements not to constitute contracts"). WPI also asserts that by the terms of the FGCAA itself, this Agreement was a contract because the principal purpose of the Agreement was to acquire services for the direct benefit and use of the United States Government. See 31 U.S.C. § 6303.

**Scope of Mediation and Effect of No Agreement**

The Parties enter into this mediation pursuant to 10 CFR §600.22(b). A subset of the regulatory guidelines applicable to disputes and appeals of agency financial assistance awards, this regulation states that "[b]efore issuing a final determination in any dispute in which informal resolution has not been achieved, the Contracting Officer shall suggest that the other party consider the use of voluntary consensual methods of dispute resolution, such as mediation."

The Parties recognize that they have agreed to mediate only the dispute identified above.

The Parties acknowledge that they are authorized to enter into a negotiated settlement agreement, the terms of which shall be set by the Parties at mediation.

In the event no agreement is reached between the Parties, the Parties acknowledge, understand, and agree that a Contracting Officer's final determination shall be issued in response to the written claims submitted by WPI to the DOE prior to entering mediation. The Parties agree that WPI may appeal the final determination to the DOE Financial Assistance Appeals Board.

The Parties also agree that by consenting to this mediation pursuant to the DOE's Financial Assistance Regulations, WPI does not waive its right to assert that the Agreement is an express contract or implied contract subject to the Contract Disputes Act, 41 U.S.C. § § 601-613, the Tucker Act, 28 U.S.C. § 1491(a), or other basis for federal jurisdiction.

**Participation in Mediation**

The Parties have agreed to attempt to settle the dispute by mediation ("the Mediation"). The provisions of the General Services Administration Rule 204 [http://gsbca.gsa.gov/ADRules.htm] (as supplemented and/or varied by this agreement) will apply to the Mediation and are incorporated in, and form part of, this agreement.

**Mediation is Voluntary**

The Parties voluntarily enter into the Mediation in an attempt to resolve a dispute amongst them. The signing of this Agreement is evidence that the Parties intend to conduct this Mediation in an honest and forthright manner and to make a serious attempt to resolve the dispute. It is, however, understood that either Party may withdraw from or suspend the mediation process at any time, for any reason or no reason.

The Parties acknowledge that the primary responsibility for resolving the outstanding issues between them rests with them and not with the Mediator. The Parties also understand that the mediator may suspend or terminate the mediation, if the mediator feels that the mediation will lead to an unreasonable result, if the mediator feels that an impasse has been reached, or if the mediator determines that he can no longer effectively perform his facilitative role.

**The Mediator**

The Parties wish the Mediator to be a Judge from the General Services Administration Board of Contract Appeals, to be named. The Parties will ask the Board's chairman to appoint any judge as the Neutral.

**Fees**

The Parties understand that the fee for the mediator will be approximately $100 per hour for time spent with the Parties and for time required to study documents, research issues, correspond, telephone call, prepare draft and final Agreements and do such other things as may be reasonably necessary to facilitate the Parties reaching full Agreement. The mediator may also expect to be reimbursed for all expenses incurred as a part of the mediation process. Responsibility for these fees and expenses shall be shared equally by the Parties. The Parties agree that in no event shall the fees and expenses exceed $6000.00 total or $3000.00 per party. The Parties will bear their own costs.

**The Representatives**

| For the Department of Energy | For WPI: |
|---|---|
| Eric Simpson, Contracting Officer<br>Office of Acquisition and Assistance<br>9800 S. Cass Avenue<br>Argonne, IL 60439<br>630-252-2108 | Garrick J. Solovey, Chief Executive Officer<br>WPI<br>2020 Kraft Drive, Suite 2200<br>Blacksburg, VA 24060 |
| Elaine B. Heath<br>Contract Management Specialist<br>Office of Environmental Management<br>[Address] | |

A Party will immediately notify the other Party and the Mediator of any change to the above.

**Other Participants**

| For the Department of Energy | For WPI: |
|---|---|
| Jameson Eisenmenger, Counsel<br>Office of Science Chicago Office<br>Office of Chief Counsel<br>9800 S. Cass Avenue<br>Argonne, IL 60439<br>630-252-2798 | Robert E. Korroch, Attorney<br>Williams Mullen<br>Fountain Plaza Three, Suite 200<br>721 Lakefront Commons<br>Newport News, VA 23606-3324<br>757-249-7105 |

A Party will immediately notify the other Party(ies) and the Mediator of any change to the above.

**Place and Time**

The Parties agree that the Mediation will be conducted in the Washington, D.C. metropolitan area, at a place to be agreed upon by the Parties, and on a date on or before ~~October 31~~, 2005.

November 7 ... 10/13/05

**Disclosure and Confidentiality**

The Parties agree to disclose all information, which is pertinent to the issues, which are the subject of the Mediation, including any necessary financial information. It is understood between the Parties and the mediator that the mediation will be strictly confidential. Mediation discussions, any draft resolutions and any unsigned mediated Agreements shall not be admissible in any court, administrative or other contested proceeding. Only a mediated Agreement signed by any Parties may be so admissible. The Parties further agree to not call the mediator to testify concerning the mediation nor to provide any materials from the mediation in any court or other contested proceeding between the Parties. The mediation is considered by the Parties and the mediator as settlement negotiations and therefore shall not be admissible in any court, administrative or other contested proceeding. The Parties also understand and agree that the mediator may have private caucus meetings and discussions with any individual Party, in which case all such meetings and discussions shall be confidential between the mediator and the caucusing Party(ies), unless the Parties agree otherwise.

- Signed: Eric M. Simpson
  on behalf of DOE October 12, 2005

- Signed: Barrick L. Solovey
  on behalf of WPI September 30, 2005